

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| LATONYA BUTLER, individually and on behalf of ANDREANAY ANDERSON | CIVIL ACTION NO. 07-0924 |
| -vs- | JUDGE DRELL |
| MISS-LOU AMBULANCE SERVICE, LLC | MAGISTRATE JUDGE KIRK |

### RULING

Before the Court is an unopposed motion for summary judgment (Doc. 12) filed by sole defendant Miss-Lou Ambulance Service, LLC ("Miss-Lou"), seeking dismissal of all of the claims against it by the plaintiff, LaTonya Butler. For the reasons set forth below, the motion will be granted.

### I. BACKGROUND

This suit was originally filed on May 5, 2007, by Ms. Butler, a Louisiana domiciliary, in the 7th Judicial District Court for the Parish of Concordia, Louisiana, on her own behalf and on behalf of her minor child, Andreanay Anderson, naming as sole defendant "Miss-Lou Ambulance Service, LLC, f/k/a Metro Rural Services, LLC, d/b/a Metro Rural Ambulance" (Doc. 1-2, p. 1), a Mississippi corporation with its principal place of business in Mississippi. On May 30, 2007, Miss-Lou removed to this Court under 28 U.S.C. § 1441 et seq., properly asserting diversity jurisdiction under 28 U.S.C. § 1332.

Ms. Butler asserts a medical malpractice claim against Miss-Lou under the Louisiana Medical Malpractice Act, La. R.S. § 40:1299.41 et seq., stating that Miss-Lou is not a qualified health care provider under the Act. This suit ultimately arose when Ms. Butler's daughter, Andreanay Anderson, two years old, was badly burned in a house fire on February 6, 2006. She was taken to Riverland Medical Center in Ferriday, Louisiana, and was treated by Dr. Sarah Lee, before arrangements were made to send her to the Louisiana State University Health Sciences Center ("LSUHSC") burn unit in Shreveport, Louisiana.

Ms. Butler's claims in this suit are based on her allegations that Miss-Lou, referred to as Metro Rural Ambulance Service in the complaint, delayed the trip to Shreveport:

6.

After Metro Rural Ambulance Service was called, there was first a delay until the appropriate number of crew members could be made available and present for the transfer.

7.

After the appropriate number of crew members were secured, a further delay was encountered when the ambulance service had begun to drive to Shreveport, but then had to turn around and return to Riverland Medical Center because the ambulance crew had forgotten some of the paperwork that would be required for the admission of Andreanay Anderson to LSUHSC in Shreveport.

8.

Andreanay Anderson was eventually transported by Metro Rural Ambulance Service and admitted to LSUHSC Shreveport Burn Unit, where she remained hospitalized and treated until her death, February 25, 2006.

(Doc. 1-2, p. 2). Ms. Butler claims that the two delays in transporting Andreanay Anderson "deprived Andreanay of timely care and treatment and caused her to suffer

more extensive injuries and death which more probably than not would not have occurred if timely care had been provided." (Doc. 1-2, p. 3).

On June 8, 2007, Miss-Lou filed a motion to dismiss (Doc. 6), seeking the dismissal of Ms. Butler's claims on behalf of Andreanay Anderson. We granted that motion on February 29, 2008 (Doc. 17), leaving only Ms. Butler's own claims against Miss-Lou in this suit. In the meantime, on September 19, 2007, we permitted Ms. Butler's attorneys to withdraw as counsel of record, allowing her thirty days to obtain new counsel. She has not since obtained new counsel and thus has continued in pro se status.

On February 6, 2008, Miss-Lou filed the instant motion for summary judgment (Doc. 12), to which Ms. Butler has filed no opposition. Miss-Lou seeks dismissal of all of Ms. Butler's claims against it on the basis that Miss-Lou is entitled to qualified immunity under La. R.S. § 40:1233 because its acts or omissions were neither intentional nor grossly negligent. Pursuant to LR56.1, Miss-Lou filed a statement of undisputed material facts which, because unopposed, we deem admitted under LR56.2, except to the extent certain of those purported facts actually constitute legal arguments.[1] We adopt that statement as follows:

1) Plaintiff, LaTonya Butler alleges she is the mother of Andreanay Anderson ("Anderson");

2) Anderson received sever[e] burns in a house fire and received initial treatment at Riverland Medical Center ("Riverland") in Ferriday, Louisiana;

---

[1] For instance, the statement asserts that Miss-Lou's actions were "neither negligent nor grossly negligent" (Doc. 13, par. 9), which legal assertion is clearly inappropriate for a statement of facts.

3

> 3) Riverland contacted Miss-Lou to transport Anderson to the burn unit located at Louisiana State University Health Sciences Center ("LSUHSC") in Shreveport, Louisiana
>
> 4) Miss-Lou's ambulance arrived at Riverland at 10:46 a.m. in response to the quest made by Riverland;
>
> 5) Anderson was made ready for transport by Riverland at 11:45 a.m., at which time the Miss-Lou Ambulance departed the scene;
>
> 6) The Miss-Lou Ambulance arrived at LSUHSC in Shreveport at 2:26 p.m., a total distance of 193 miles, for a total travel time of 2 hours 41 minutes.
>
> 7) There was nothing unusual or problematic that took place during the transfer;
>
> \* \* \*
>
> 10) The Miss-Lou emergency personnel were all licensed by the State of Louisiana;
>
> 11) The Miss-Lou emergency personnel were transporting Anderson pursuant to the orders and protocols issued by Dr. Sarah Lee, the Riverland emergency room physician and medical director for Miss-Lou; and
>
> 12) Anderson ultimately succumbed to her life-threatening burn injuries on February 24, 2006, nineteen days after her arrival at LSUHSC.

(Doc. 13).

This statement is a bit light on the specifics regarding the two key periods at issue in the complaint: the alleged delay in initially leaving the hospital and the alleged second delay that resulted from having to return to the hospital for forgotten paperwork. Unlike the statement of material facts, a passage in Miss-Lou's memorandum in support explains those details, and because that passage relies exclusively on uncontroverted record evidence, we adopt it here:

4

Roger Calkins, Joyce Perry and Benjamin Wyles were the Miss-Lou Ambulance employees personally involved with the transfer of Anderson from Riverland to the LSUHSC Burn Unit. Calkins was the certified basic Emergency Medical Technician that [sic] drove the ambulance at issue. Perry and Wyles were the certified paramedics who rode in the rear of the ambulance. Calkins and Perry were dispatched at 10:25 a.m. and arrived at Riverland at 10:46 a.m. Upon arrival, they were informed by Riverland that they would be transferring Anderson to the burn unit in Shreveport. Perry realized in advance that Anderson would need breathing assistance via hand-manipulated bag and thus a second paramedic would be helpful in order to take turns manipulating the bag while medication was administered. Accordingly, Perry contacted Wyles, who arrived at the scene shortly thereafter. If a second paramedic was not there, the ambulance would have to stop each time medication was administered so that the basic EMT could manipulate the bag while Perry administered the medication. If Wyles had not arrived once Anderson was ready for transport, Perry and Calkins would have left without him due to the serious nature of the situation.

Perry[,] Calkins and Wyles all testified that when Wyles arrived, Anderson was not yet in the ambulance. Approximately twenty minutes after Wyles' arrival, Anderson had been stabilized and made ready for transport by Riverland and the ambulance was underway.

Upon leaving, the EMTs had the necessary Riverland patient transfer form, which was all that was necessary to admit Anderson to the burn unit. After traveling approximately seven blocks, the ambulance was contacted by the dispatcher, who informed them that the hospital had called and requested they turn around to retrieve x-rays. Because they were still close to the hospital, Calkins turned the ambulance around and returned to the hospital. The short return to Riverland was precipitated by the hospital's instructions and not by Miss Lou. The ambulance barely stopped as a hospital employee was standing outside with the x-rays, which were given to the paramedics in the rear of the ambulance. The ambulance departed the scene at 11:45 a.m., and arrived at the burn unit after traveling 193 miles at 2:26 p.m., a total time of approximately 2 hours, 41 minutes. There was nothing unusual or problematic that took place during the transfer.

(Doc. 14, pp. 3-5) (citations to affidavits of Calkins, Perry, and Wyles omitted).

With the above facts in mind, we turn to the merits of Miss-Lou's motion.

5

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Id. A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2510-11 (1986). If the movant produces evidence tending to show there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 321-23, 106 S. Ct. 2548, 2552 (1986)). In the analysis, all inferences are drawn in the light most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. Brock v. Chevron U.S.A., Inc., 976 F.2d 969, 970 (5th Cir. 1992). Finally, "a mere scintilla [of evidence] is not enough to defeat a motion for summary judgment." Davis v. Chevron U.S.A., Inc., 14 F.3d 1082, 1086 (5th Cir. 1994) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).

## III. ANALYSIS

Miss-Lou claims that it is entitled to immunity under La. R.S. § 40:1233, which provides, in relevant part:

A. (1) Any emergency medical person certified pursuant to the provisions of this Subpart who <u>renders emergency medical care to an individual while in the performance of his medical duties</u> and <u>following the instructions of a physician</u> shall not be individually liable to such an individual for civil damages as a result of acts or omissions in rendering the emergency medical care, <u>except for acts or omissions intentionally designed to harm, or for grossly negligent acts or omissions which result in harm to such an individual</u>. Nothing herein shall relieve the driver of the emergency vehicle from liability arising from the operation or use of such vehicle.

(2) The immunity granted to emergency medical personnel by the provisions of this Subpart shall extend to parish governing authorities, police departments, sheriffs' offices, fire department, or other public agencies engaged in rendering emergency medical services and its insurers with respect to such emergency medical services unless the emergency medical personnel employed by such agencies would be personally liable under the provisions of Paragraph (1) of this Subsection.

La. R.S. § 40:1233(A) (emphasis added).

On its face, Section 1233 applies only to individual emergency medical persons and to public entities. Louisiana courts have applied Section 1233 to private companies by way of <u>respondeat superior</u>. This was best explained by the Louisiana Second Circuit Court of Appeals:

> Employers are answerable for the damage caused by their employees in the exercise of the functions in which they are employed. La. C.C. art. 2320. This article imposes the liability of the employee on the employer through vicarious liability. The employee's liability is based on his act or omission and the employer's secondary and derivative liability is imposed by law on the basis of the relationship. Therefore, except for independent tortious acts otherwise committed by the employer, an employer can only be held liable (through vicarious liability) if his employees are found liable in the first instance.
>
> \* \* \*
>
> We must determine whether the limitation on liability established in La. R.S. 40:1233 is a personal defense for EMTs or one that arises from the nature of the obligation and can be raised by their private employers such as AMS and Metro. Personal defenses bar a right of action where a cause

of action would have otherwise existed. Immunity from liability destroys a plaintiff's substantive cause of action against the immune party, while immunity from suit restricts the plaintiff's right to sue the defendant. Personal defenses are also granted to all members of a specific class and do not depend upon the nature of the accident.

La. R.S. 40:1233 does not grant emergency medical personnel immunity from suit, only immunity from liability under certain circumstances. First, the EMT must be rendering emergency medical care to an individual while in the performance of his medical duties. Second, the EMT must be following the instructions of a physician. Third, the immunity from liability does not apply to acts or omissions intentionally designed to harm, or for grossly negligent acts or omissions which result in harm to such an individual. La. R.S. 40:1233 does not provide a personal defense and its limitation on liability arises from the nature of the obligation. This defense is available to a private ambulance service solely when the liability of the private ambulance service is premised on the liability of its emergency medical person (a solidary obligor) who could raise the defense.

Kyser v. Metro Ambulance, Inc., 764 So. 2d 215, 218-19 (La. App. 2 Cir. 2000), writ denied, 772 So.2d 650 (La. 2000) (affirming the district court's grant of summary judgment in favor of the defendant ambulance service) (citations omitted).

In this case, Miss-Lou's potential liability arises only from the acts or omissions of its employees, the emergency medical technicians ("EMTs") who drove the ambulance and administered medical care to Andreanay Anderson. Accordingly, Miss-Lou is entitled to invoke Section 1233(A) on behalf of its employees to the same extent those employees would be entitled to invoke the statute.

We must determine whether or not Section 1233(A) applies in this case. As noted in Kyser, there are three inquiries under the statute. First, were the Miss-Lou EMTs rendering medical care to Andreanay Anderson in the performance of their medical duties? The answer is undoubtedly yes. Second, were the EMTs following the instructions of a physician? Again, the answer is yes; the evidence clearly shows that

the Miss-Lou EMTs were following the directions of Dr. Sarah Lee at the Riverside emergency room.

The third question is whether the Miss-Lou EMTs' acts or omissions were either designed to harm or were grossly negligent. Ms. Butler has not alleged that the EMTs intentionally committed harm, so we address only whether their acts or omissions were grossly negligent. In a case under La. R.S. § 40:1235, the predecessor to Section 1233, the Louisiana Supreme Court summarized the Louisiana jurisprudence defining gross negligence as follows:

> Louisiana courts have frequently addressed the concept of gross negligence. Gross negligence has been defined as the "want of even slight care and diligence" and the "want of that diligence which even careless men are accustomed to exercise." State v. Vinzant, 200 La. 301, 7 So.2d 917 (La.1942). Gross negligence has also been termed the "entire absence of care" and the "utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others." Hendry Corp. v. Aircraft Rescue Vessels, 113 F.Supp. 198 (E.D.La.1953) (applying Louisiana law). Additionally, gross negligence has been described as an "extreme departure from ordinary care or the want of even scant care." W. Page Keeton, et. al., Prosser & Keeton on the Law of Torts, § 34, at 211 (5th ed. 1984); 65 C.J.S. Negligence, § 8(4)(a), at 539-40 (1966 & Supp.1993). "There is often no clear distinction between such [willful, wanton, or reckless] conduct and 'gross' negligence, and the two have tended to merge and take on the same meaning." Falkowski v. Maurus, 637 So.2d 522 (La.App. 1st Cir.), writ denied, 629 So.2d 1176 (La.1993) (quoting Prosser & Keeton, supra, at 214)). Gross negligence, therefore, has a well-defined legal meaning distinctly separate, and different, from ordinary negligence.

Ambrose v. New Orleans Police Dept. Ambulance Service, 639 So.2d 216, 219-20 (La. 1994).

Here, there is no evidence suggesting gross negligence. The uncontroverted facts are that all three Miss-Lou EMTs were prepared to depart and did depart at 11:45 a.m., when Andreanay Anderson was made ready to transport by Riverland employees.

9

Significantly, young Andreanay was not able to be stabilized for travel by hospital personnel until immediately before the ambulance departed. The only actual delay was caused by making a seven-block return trip to the hospital for x-rays, also as requested by the hospital, rather than for required admission paperwork, as alleged in the complaint but unsupported by any evidence. The trip back evidently added very little time to the journey, judging by the distance involved and the fact that the x-rays were handed to the ambulance personnel outside and necessitated only a brief pause. Indeed, not to have retrieved the x-rays may well have resulted in greater delay in treatment at the destination hospital. The record also shows that, based on a 193-mile trip completed in 2 hours and 41 minutes, the Miss-Lou ambulance averaged over 70 miles per hour throughout the trip, including the brief return to the hospital.

Even if we were to rely only on the complaint's unsupported allegations, the conduct involved arguably would not rise to the level of gross negligence under the stringent legal standard explained above. We need not rely on the complaint's bare allegations, however; the record is well developed and demonstrates that the complaint significantly overstates the delays. The Miss-Lou EMTs transported Andreanay Anderson with due care and due speed. In short, there is nothing in the record to support a finding that the Miss-Lou EMTs were grossly negligent.

Because the Miss-Lou EMTs were "render[ing] emergency medical care to an individual while in the performance of [their] medical duties"; were "following the instructions of a physician"; and their actions were not intentional or grossly negligent, they are entitled to civil immunity for their acts or omissions under La. R.S. § 40:1233(A).

Consequently, as the private employer of the EMTs whose potential liability is premised solely on vicarious liability for the EMTs' actions under La. Civ. Code art. 2320, Miss-Lou is entitled to civil immunity under La. R.S. § 40:1235(A) as well. Consequently, Miss-Lou's motion will be granted, and all of Ms. Butler's claims will be dismissed, terminating this suit.

## IV. CONCLUSION

For the foregoing reasons, the motion for summary judgment (Doc. 12) filed by Miss-Lou is GRANTED. By separate judgment, all of the claims of the plaintiff, LaTonya Butler, against Miss-Lou will be dismissed with prejudice, which shall terminate this suit.

SIGNED on this 22nd day of July, 2008 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE